FILED
2011 May-23  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| LOUISE PURDOM HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 10-G-1077-S |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

The plaintiff, Louise Purdom Hill, brings this action pursuant to the provisions of section 205(g) of the Social Security Act (the Act), 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner of the Social Security Administration (the Commissioner) denying her application for Social Security Benefits.  Plaintiff timely pursued and exhausted her administrative remedies available before the Commissioner.  Accordingly, this case is now ripe for judicial review under 205(g) of the Social Security Act (the Act), 42 U.S.C. §405(g).

## STANDARD OF REVIEW

The sole function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).  To that end this court "must scrutinize the record as a whole to determine if the decision reached

is reasonable and supported by substantial evidence." Bloodsworth, at 1239 (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth, at 1239.

## STATUTORY AND REGULATORY FRAMEWORK

In order to qualify for disability benefits and to establish her entitlement for a period of disability, a claimant must be disabled.  The Act defines disabled as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months . . . ." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(I).  For the purposes of establishing entitlement to disability benefits, physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant is disabled, Social Security regulations outline a five-step sequential process. 20 C.F.R.§ 404.1520(a)-(f).  The Commissioner must determine in sequence:

 (1) whether the claimant is currently employed;

 (2) whether she has a severe impairment;

 (3) whether her impairment meets or equals one listed by the Secretary;

 (4) whether the claimant can perform her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

Pope v. Shalala, 998 F.2d 473, 477 (7th Cir.1993); accord McDaniel v. Bowen, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied Steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her past work, the burden shifts to the Secretary to show that the claimant can perform some other job." Pope at 477; accord Foote v. Chater, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner further bears the burden of showing that such work exists in the national economy in significant numbers. Id.

## THE STANDARD FOR REJECTING
## THE TESTIMONY OF A TREATING PHYSICIAN

As the Sixth Circuit has noted: "It is firmly established that the medical opinion of a treating physician must be accorded greater weight than those of physicians employed by the government to defend against a disability claim." Hall v. Bowen, 837 F.2d 272, 276 (6th Cir. 1988). "The testimony of a treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary." McGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); accord Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991). In addition, the Commissioner "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight ...." McGregor, 786 F.2d at 1053. If the Commissioner ignores or fails to properly refute a treating physician's testimony, as a matter of law that testimony

must be accepted as true.  McGregor, 786 F.2d at 1053; Elam, 921 F.2d at 1216.  The Commissioner's reasons for refusing to credit a claimant's treating physician must be supported by substantial evidence.  See McGregor, 786 F.2d at 1054; cf. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987)(articulation of reasons for not crediting a claimant's subjective pain testimony must be supported by substantial evidence).

## THE STANDARD WHEN THE CLAIMANT TESTIFIES
## SHE SUFFERS FROM DISABLING PAIN

In this circuit, "a three part 'pain standard' [is applied] when a claimant seeks to establish disability through his or her own testimony of pain or other subjective symptoms."  Foote, at 1560.

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

Foote, at 1560 (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).  In this circuit medical evidence of pain itself, or of its intensity, is not required.

> While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself.  Thus under both the regulations and the first (objectively identifiable condition) and third (reasonably expected to cause pain alleged) parts of the Hand standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself.  See 20 CFR §§ 404.1529 and 416.929;  Hale at 1011.

Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11th Cir. 1991)(parenthetical information omitted)(emphasis added).  Furthermore, it must be kept in mind that "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote at 1561.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, he must be found disabled unless that testimony is properly discredited.

When the Commissioner fails to credit a claimant's pain testimony, he must articulate reasons for that decision.

> It is established in this circuit that if the Secretary fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the Secretary, as a matter of law, has accepted that testimony as true.  Implicit in this rule is the requirement that such articulation of reasons by the Secretary be supported by substantial evidence.

Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987).  Therefore, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if his reasons are not supported by substantial evidence, the pain testimony of the plaintiff must be accepted as true.

## THE IMPACT OF A VOCATIONAL EXPERT'S TESTIMONY

It is common for a vocational expert ("VE") to testify at a claimant's hearing before an ALJ, and in many cases such testimony is required.  The VE is typically asked whether the claimant can perform his past relevant work or other jobs that exist in significant numbers withing the national economy based upon hypothetical questions about the claimant's abilities in spite of his impairments.  "In order for a vocational

expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

If the claimant is unable to perform his prior relevant work the burden shifts to the Commissioner to establish that he can perform other work.  In such cases, if the vocational expert testimony upon which the ALJ relies is based upon a hypothetical question that does not take into account all of the claimant's impairments, the Commissioner has not met that burden, and the action should be reversed with instructions that the plaintiff be awarded the benefits claimed.  This is so even if no other hypothetical question is posed to the VE.  See Gamer v. Secretary of Health and Human Services, 815 F.2d 1275, 1280 (9th Cir. 1987)(noting that when the burden is on the Commissioner to show the claimant can do other work, the claimant is not obligated to pose hypothetical questions in order to prevail).  However, it is desirable for the VE to be asked whether the claimant can perform any jobs if his subjective testimony or the testimony of his doctors is credited.  Such a hypothetical question would allow disability claims to be expedited in cases in which the ALJ's refusal to credit that testimony is found not to be supported by substantial evidence.

In Varney v. Secretary of Health and Human Services, 859 F.2d 1396 (9th Cir. 1987), the Ninth Circuit adopted the Eleventh Circuit rule which holds that if the articulated reasons for rejecting the plaintiff's pain testimony are not supported by substantial evidence, that testimony is accepted as true as a matter of law.  Id at 1401.

The court noted that "[a]mong the most persuasive arguments supporting the rule is the need to expedite disability claims." Id.  If the VE is asked whether the claimant could perform other jobs if his testimony of pain or other subjective symptoms is accepted as true, the case might be in a posture that would avoid the necessity of a remand.  As Varney recognized, if the VE testifies the claimant can perform no jobs if his pain testimony is accepted as true, the only relevant issue would be whether that testimony was properly discredited.  Id.  This also holds true for the opinions of treating physicians.

## DISCUSSION

The plaintiff was 43 years old at the time of ALJ Michael L. Brownfield's decision.  The ALJ found that the plaintiff has the following severe impairments: degenerative joint disease, multiple small cervical disc bulges, and hypertension. [R. 12].

A May 3, 2005, MRI of the plaintiff's cervical spine showed the following:

> C2-3: There is right-sided uncinate spurring that causes some slight narrowing of the right neuroforamen.
>
> C3-4: There is an annular disk bulge at this level, non lateralizing.
>
> C4-5: There is a more focal right paracentral disk protrusion at this level. This indents the right anterolateral aspect of the thecal scan and would appear to contact the right anterolateral surface of the spinal cord.
>
> C5-6: There is a disk osteophyte complex at this level that shows right-sided lateralization.  There is effacement of the right anterolateral aspect of the thecal sac and probably some compromise of the right neuroforamen.
>
> C6-7: There is a small midline disk protrusion at this level.  This indents the anterior aspect of the thecal sac centrally.

[R. 182].

A follow-up MRI on February 7, 2007, revealed:

> C4-5: There is a small right-sided disc bulge, which abuts the cord slightly and causes exit canal narrowing on the right. There is no disc height loss or endplate degeneration.
>
> C5-6: There is a small right-sided disc bulge, which compresses the cord very slightly. There is also mild right exit canal narrowing. This is minimal.
>
> C6-7: There is a small central disc bulge, which abuts the cord slightly. There is no edema in the cord.
>
> Multilevel small disc bulges mainly on the right. The right upper extremity pain could be from the right C4-5 and right C5-6 exit canal narrowing.

[R. 178-179].

The record reveals that the plaintiff was treated by Samuel R. Bowen, II, M.D., a neurologist  On May 20, 2005, Dr. Bowen noted "neck pain, pain in both legs, tingling in her right arm, numbness in her right arm. I think the right arm and neck are the biggest problems at this time. She has had this for about a month and it has not gotten any better." [R. 168].On May 24, 2005, commented that the cervical MRI shows "a little bit of a spur at C5-6 off to the right." [R. 167]. "She probably needs to consider surgery." [R. 166]. On June 9, 2005, Dr. Bowen wanted to "set her up with some cervical blocks and see how she does with that." [R. 165]. Dr. Bowen wanted to rule out carpal tunnel syndrome, and on June 23, 2005, nerve conduction studies were normal. [R. 163].

On January 17, 2007, the plaintiff was seen at Cooper Green Hospital, but she reported pain at zero. [R. 191]. On February 28, 2007, she reported pain at an eight out of ten. [R. 190]. On June 11, 2007, her reported pain was a seven out of ten. [R. 217].

At an October 9, 2007, follow-up visit, she reported "no problems at this time," and her pain again was at zero. [R. 216].

On October 26, 2007, she was seen by Mamerhi Okor, M.D., at the Kirklin Neurosurgery Clinic. Dr. Okor noted on examination that "she has full range of motion about her cervical spine. She has no tenderness to palpation in the midline cervical spine, paraspinous, or shoulder region." [R. 232]. "Motor, sensory, and reflex testing is all within normal limits." Id. Dr. Okor reviewed the 2007 MRI and noted minor disk bulges but no evidence of nerve root or spinal cord compression. Her assessment:

> Although she has concerning symptoms, I cannot identify any concerning imaging finding nor can I identify any hard signs on her neurogic [sic] exam, I do not think that Ms. Louise would be a good candidate for surgical decompression as no structural lesions can be identified. I think she would best benefit from non-surgical management as has already been undertaken. In addition, she may benefit from cervical traction. Since no surgical therapy is planned, we will discharge her from the neurosurgery clinic back to the care of her referring physician.

[R. 233].

The plaintiff was seen by Jian Fong, M.D., on May 26, 2007, for a consultative physical examination. Dr. Fong found "tenderness to palpation in her cervical spine and her lumbar spine with paravertebral muscle spasm." [R. 199]. However, motor strength was 5/5 in the left upper extremity and bilateral low extremities. On the right side, the plaintiff had 2/5 strength, including hand grip. (The plaintiff is left-handed). Dr. Fong's diagnosis was neck pain with radiculopathy to the right upper

extremity, and back pain. [R. 199]. Dr. Fong did not complete a functional capacities evaluation.

On May 27, 2008, the plaintiff was examined at the Thuss Medical Center. The doctor there found <u>moderate to severe</u> degenerative joint disease of the cervical spine with bulging discs and loss of disc space at C4-5 and C5-6, as well as a flattening of the cervical curve. [R. 203].(emphasis added) Dr. Thuss noted the plaintiff had a decreased range of motion and flexion of her lower back. [R. 202]. Dr. Thuss also tested the plaintiff's hand strength which he found to be decreased, more severely on the right. [R. 204].The ALJ rejected the diagnosis of Dr. Thuss, and found that plaintiff's pain testimony was not credible:

> In terms of the claimant's alleged pain and numbness, the medical evidence of record shows that the claimant could reasonably experience some pain and numbness, but not more than mild, to at most, moderate symptoms (Exhibits 12F-1F). Indeed, none of the claimant's doctors ever opined that the claimant's pain was severe, she did not persistently report moderately severe or severe pain to her doctors, and she was never persistently prescribed powerful pain medications. Moreover, the claimant's X-rays and MRI scans revealed generally mild changes in her neck and low back. Only the reported MRI findings from the claimant's basic physical examination from Thuss Medical Group allege any degenerative changes of more than moderate degree and they are inconsistent with the great weight of the medical evidence of record which includes multiple MRI and x-ray scans (Exhibit 8F).
>
> Regarding the claimant's alleged weakness, the medical evidence of record shows that the claimant has some generally mild atrophy and weakness in her right upper extremity (Exhibit 7F). Nevertheless, the great weight of the medical evidence of record does not show that her weakness is greater than mild, to at most, moderate in severity. None of the claimant's doctors ever noted the claimant displayed persistent severe weakness in any of her upper extremities (Exhibits 12F-1F). Indeed, the only extremity noted to

exhibit weakness and atrophy is the claimant's right arm. Her dominant left arm was never noted to have any persistent significant weakness or pain.

[R. 15]. The ALJ found that the plaintiff is capable of performing her past relevant work as a cashier, with a sit/stand option. [R. 16].

Dr. Thuss found moderate to severe degenerative joint disease. Without question severe degenerative disc disease can cause disabling pain. See Jenkins v. Sullivan, 906 F.2d 107, 109 (4th Cir. 1990)(noting that degenerative disc disease is a condition that could reasonably be expected to produce disabling pain); Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)(same). The ALJ's statement that none of the plaintiff's doctors ever noted persistent severe weakness in her upper extremities is simply not supported by the record. Dr. Thuss specifically conducted hand strength testing, which showed moderate to severe weakness as compared to an average person of the plaintiff's age. [R. 204]. The reasons given by the ALJ for rejecting the opinion of treating Dr. Thuss are not supported by substantial evidence. An ALJ is not free to base his decision on unstated reasons or hunches. Judge Johnson eloquently stated the proper role of an ALJ in his concurring opinion in Marbury v. Sullivan, as follows:

> An ALJ sitting as a hearing officer abuses his discretion when he substitutes his own uninformed medical evaluations for those of claimant's treating physicians: "Absent a good showing of cause to the contrary, the opinions of treating physicians must be accorded substantial or considerable weight by the Secretary." Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988).
> . . . An ALJ may, of course, engage in whatever idle speculations regarding the legitimacy of the claims that come before him in his private or personal capacity;  however, as a hearing officer he may not arbitrarily substitute his own hunch or intuition for the diagnosis of a medical professional.

957 F.2d 837, 840-41 (11th Cir. 1992)(emphasis in original). The ALJ, therefore, "succumbed to the [forbidden] temptation to play doctor and make [his] own independent medical findings." Rohan v. Chater, 98 F.3d 966, 970 (7th Cir. 1996). Therefore, the testimony of the plaintiff and Dr. Thuss must be taken as true, and the ALJ failed to satisfy the requirements of Hale. The conclusion of that court is equally appropriate in the instant case. "[T]he Secretary has articulated reasons for refusing to credit the claimant's pain testimony, but none of these reasons is supported by substantial evidence. It follows, therefore, that claimant's pain testimony has been accepted as true." Hale, at 1012.

At the ALJ hearing, the plaintiff testified that she has throbbing pain in her neck and down her arms, and "from the back of my head to the small of my back." [R. 54]. She stated that she has weakness in her hands and numbness, especially on the right side. [R. 59]. She also testified that she has good days and bad days, "but my good days seem to come far and few." Id. She takes flexeril and naproxen for pain, and sometimes supplements with over the counter pain relievers, but she is still in pain. [R. 127-28]. In her Physical Activities Questionnaire, the plaintiff stated that routine tasks take much longer to complete "because I'm unable to move around as well as I used to or raise my arms to dress or button up my clothes." [R. 122]. The plaintiff testified:

> After standing for 10-12 minute[s] I have to sit or move around. Sitting is better if I'm able, after I walk for so long I have to sit down and sometimes it's very slow due to by back pain. While sitting I have to adjust my position as best I can quite often.

Id.

At the hearing, vocational expert identified sedentary jobs which would allow for a sit/stand option. [R. 63]. The ALJ questioned the vocational expert:

Q: Could such jobs be performed by an individual who experiences pain of a moderate degree? kitchen helper, and basically, the wide-world of unskilled work?

A: Yes, sir.

Q: Suppose an individual experiences pain from a moderately severe to a severe degree, how would that affect performance of the job?

A: That level of pain on a chronic basis would preclude the performances of any of these jobs, or any other jobs.

Q: If I were to find the claimant's testimony to be fully credible and supported by the record as a whole, would she be capable of performing her past work or any other work?

A: No, sir.

Q: What's the basis of you[r] opinion?

A: The limitations to postural positions such as standing, walking, sitting, the, well, her testimony is no hand strength. But indicating limitations of hand strength that don't allow her to grasp, handle, certainly the categories of jobs would be unskilled that she might be able to perform. And unskilled sedentary jobs in particular require coordinated use of [both] upper extremities. Primarily the pain.

[R. 64]. Taking the testimony of the plaintiff, and the plaintiff's treating physician as true, the plaintiff is disabled within the meaning of the Social Security Act.

## CONCLUSION

This is a case where "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt."  Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).  In such a case the action should be reversed and remanded with instructions that the plaintiff be awarded the benefits claimed.  Id.

DONE and ORDERED 23 May 2011.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.